# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| POLARIS INDUSTRIES INC. and POLARIS SALES INC., | Civil No. 14-3412 (JRT/FLN) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS DEFENDANTS' UNENFORCEABILITY AND ANTITRUST COUNTERCLAIMS AND DEFENSE** |
| v. | |
| ARCTIC CAT INC. and ARCTIC CAT SALES INC., | |
| Defendants. | |

Dennis C. Bremer, William F. Bullard, Alan G. Carlson, and Samuel T. Lockner, **CARLSON, CASPERS, VANDENBURGH, LINDQUIST & SCHUMAN, PA**, 225 South Sixth Street, Suite 4200, Minneapolis, MN 55402, for plaintiffs.

John C. Adkisson, Joseph A. Herriges, and Ann N. Cathcart Chaplin, **FISH & RICHARDSON PC**, 60 South Sixth Street, Suite 3200, Minneapolis, MN 55402, for defendants.

Plaintiffs Polaris Industries Inc. and Polaris Sales Inc. (together, "Polaris") bring this patent infringement action against Defendants Arctic Cat Inc. and Arctic Cat Sales Inc. (together, "Arctic Cat"). Arctic Cat filed an answer raising several defenses and asserting several counterclaims, alleging inequitable conduct on the part of Polaris's patent prosecution attorney and monopolization by Polaris of the 4x4 Trail Recreational Off-Highway Vehicle ("ROV") market. Polaris now moves to dismiss those claims under Federal Rule of Civil Procedure 12(b)(6). Accepting as true all facts alleged in Arctic Cat's answer and counterclaims, the Court concludes that Arctic Cat has not

adequately pleaded claims for inequitable conduct, *Walker Process* fraud, or sham litigation. Therefore, the Court will grant Polaris's motion in its entirety and dismiss those counterclaims and defenses.

## BACKGROUND[1]

### I. THE PARTIES AND THE '028 PATENT

In response to increased interest in recreational use of all-terrain vehicles ("ATVs") on public trails, Polaris developed a line of ATVs featuring side-by-side seating and engine and frame dimensions of less than fifty inches – the maximum allowable width established by many parks for use of ATVs on public trails. (Answer & Countercl. ("Countercl."), Ex. B ("'028 Patent") at 34, Oct. 1, 2014, Docket No. 8.) Polaris separately patented various aspects of the line. (*Id.*; *id.*, Ex. A ("'405 Patent").) Arctic Cat subsequently designed its "Wildcat" line of ATVs, which Polaris argues infringes on its patents. (Countercl. ¶¶ 23, 86, 88.) Polaris and Arctic Cat have each filed actions before this Court – for patent infringement and a declaration of non-infringement, respectively – with respect to several of the patents relevant to Polaris's ATV line.[2]

---

[1] The facts in this case have been described in detail by the Court in a previous Order. *See Arctic Cat, Inc. v. Polaris Indus. Inc.*, No. 13-3579, No. 13-3595, 2014 WL 5325361, at *1-*7 (D. Minn. Oct. 20, 2014). The Court will repeat here only those facts relevant to the present motion.

[2] Civil Case No. 13-3579 involves infringement allegations as to Polaris's '405, '220, and '125 Patents. Civil Case No. 14-3386 relates to Polaris's '719 Patent.

Polaris's U.S. Patent No. 8,827,028 ("'028 Patent") forms the basis for this particular action. (Compl. ¶¶ 8-12, Sept. 9, 2014, Docket No. 1.) The '028 Patent issued on September 9, 2014. (*Id.* ¶ 9.) The patent had been pending for over eight years, as Polaris filed its application for the patent on July 28, 2006. ('028 Patent at 2; Decl. of Alan G. Carlson ("Carlson Decl."), Ex. 1 (public prosecution history of '028 Patent) at 2, Oct. 27, 2014, Docket No. 18.) On July 30, 2014, Polaris paid the requisite "issue fee" for the issuance of its '028 Patent. (Countercl. ¶ 61.) Following this, on August 20, 2014, the United States Patent and Trademark Office ("PTO") published an Issue Notification stating that the '028 Patent would issue on September 9, 2014. (*Id.* ¶ 45.)

On August 29, 2014 – just over one week before the '028 Patent was scheduled to issue – Arctic Cat filed two petitions for *inter partes* review of another Polaris patent, U.S. Patent No. 8,596,405 ("'405 Patent"),[3] asserting that it was "render[ed] obvious" by existing patents. (Carlson Decl., Exs. 9-12.) The '028 Patent is not mentioned in Arctic Cat's petitions for *inter partes* review of the '405 Patent. Nonetheless, on September 4, 2014, Eric Groen – the attorney prosecuting the '405 Patent on behalf of Polaris – filed an Information Disclosure Statement ("IDS") to the PTO for the '028 Patent to make a record of the '405 *inter partes* review petitions. (Countercl. ¶¶ 46, 54.) On September 9, the '028 Patent issued as scheduled. ('028 Patent at 2.) That same day, Polaris brought this action against Arctic Cat, alleging that many of Arctic Cat's products, including its "Wildcat" line of ATVs, infringe on the '028 Patent. (Compl. ¶¶ 8-12.)

---

[3] The '405 Patent had issued earlier, on December 3, 2013. ('405 Patent at 2.)

## II. ARCTIC CAT'S ALLEGED INEQUITABLE CONDUCT COUNTER-CLAIMS

In response to Polaris's accusations of infringement in this case, Arctic Cat filed a counterclaim alleging that Polaris made several material misrepresentations in pursuit of the '028 Patent. As to the material misrepresentation claims, Arctic Cat maintains that Groen should have ensured that the '405 *inter partes* review material was considered by the PTO, by submitting the material along with a Petition to Withdraw the pending patent application for the '028 Patent under 37 C.F.R. § 1.313(c) and filing a Request for Continued Examination under 37 C.F.R. § 1.114. (Countercl. ¶¶ 58, 66.) Arctic Cat asserts that "[t]he specifications of the '028 and '045 Patents are the same, with the exception of minor variations in some of the drawings." (*Id.* ¶ 17.) Because of this, Arctic Cat argues that prior art references, and prior art reference combinations,[4] material to the patentability of the '405 Patent "are also material to the patentability of at least some claims of the '028 Patent, including at least claim 87." (*Id.* ¶¶ 20-22.) Polaris acknowledges that the two patents are related in subject matter, and originate from applications filed on the very same day, but disputes that they are related to the extent that Arctic Cat alleges, because no two claims of the patents are the same.

---

[4] "Prior Art" is defined as "[k]nowledge that is publicly known, used by others, or available on the date of invention to a person of ordinary skill in an art, including what would be obvious from that knowledge." *Black's Law Dictionary* (10th ed. 2014). This knowledge can include "(1) information in applications for previously patented inventions; (2) information that was published more than one year before a patent application is filed; and (3) information in other patent applications and inventor's certificates filed more than a year before the application is filed. The U.S. Patent and Trademark Office and courts analyze prior art before deciding the patentability of a comparable invention." *Id.*

Arctic Cat contends that Groen was an experienced patent litigator who understood that the PTO would not consider the additional prior art submissions once the issue fee had been paid, which made his actions knowing, deliberate, and done with the specific intent to deceive the PTO. (Countercl. ¶¶ 28-70.) Arctic Cat argues that, had Groen withdrawn the patent application and given the PTO time to consider the prior art, the PTO would not have ultimately issued the '028 Patent because it would have been rendered obvious. (*Id.* ¶¶ 55-57, 72.)

In support of its counterclaims, Arctic Cat alleges that Groen made three material misrepresentations or omissions during the submission of the IDS that serve as evidence of misconduct. Polaris does not dispute that Groen committed the three actions, although they describe them as "scrivener's errors" instead of material misrepresentations. First, in submitting the IDS to disclose Arctic Cat's '405 Patent *inter partes* review petition, Groen represented to the PTO that the '405 Patent "is a related application to the ['028 Patent] pending application." (*Id.* ¶ 60 (internal quotation marks omitted).) That representation, Arctic Cat claims, was false. Polaris agrees, explaining that although the two patents cover related subject matter, the specifications are not the same.

The second and third misrepresentations alleged by Arctic Cat are related. The second is that, although the issue fee for the '028 Patent had already been paid on July 30, 2014, Groen erroneously stated in the IDS on September 4, 2014: "Applicants note that this submission is made before the payment of the issue fee." (Countercl. ¶ 61.) At the same time, Groen stated that the IDS was being filed pursuant to 37 C.F.R. § 1.97. (*Id.* ¶ 62.) This statement is untrue, because 37 C.F.R. § 1.97(d) provides that an IDS

will be considered by the PTO if, among other requirements, it is "filed on or before payment of the issue fee . . . ." 37 C.F.R. § 1.97(d). This, Arctic Cat alleges, is the third misrepresentation.

## III. PROCEDURAL HISTORY

Polaris filed this action on September 9, 2014. On October 1, 2014, Arctic Cat answered Polaris's complaint and included these counterclaims, along with several affirmative defenses. Specifically, Arctic Cat seeks a declaration of non-infringement as to the '028 Patent on the grounds that it is invalid. (Countercl. ¶ 5.) Further, Arctic Cat asserts that Polaris's '028 Patent is unenforceable due to Polaris's inequitable conduct before the PTO. (*Id.*) Arctic Cat also seeks a judgment that Polaris has monopolized or attempted to monopolize the 4x4 Trail ROV market in violation of Section 2 of the Sherman Anti-Trust Act by committing fraud during the prosecution of the '028 Patent, (*id.* ¶ 6), and by engaging in sham litigation, (*id.* ¶ 7). On October 27, 2014, Polaris moved to dismiss the unenforceability and antitrust counterclaims. (Mot. to Dismiss.) This matter is now before the Court on Polaris's motion.

## ANALYSIS

## I. STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'" *Magee v. Trs. of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). Finally, Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). In addition to evaluating the pleadings, the Court may properly consider materials that are "necessarily embraced" by the pleadings. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1068-69 (8th Cir. 2004) (internal quotation marks omitted).

Additionally, inequitable conduct claims are held to the higher pleading standard required for claims of fraud or mistake under Federal Rule of Civil Procedure 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). On top of this, the Federal Circuit further heightened the pleading standards for inequitable conduct claims in 2009. Thus, courts now approach inequitable conduct pleadings in patent cases with the understanding that "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

## II. INEQUITABLE CONDUCT COUNTERCLAIM AND DEFENSE

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability . . . ." 37 C.F.R. § 1.56(a). "A breach of this duty – including affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information – coupled with an intent to deceive, constitutes inequitable conduct." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007).

The party asserting inequitable conduct – Arctic Cat, in this instance – bears the burden of proving inequitable conduct. *Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1146 (Fed. Cir. 2003). Inequitable conduct has two substantive elements. In order to succeed on its claim, Arctic Cat must prove that in the prosecution of its patent, Polaris "(1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [PTO]." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007) (citation omitted). Whether inequitable conduct has been adequately pled is a matter of Federal Circuit law because it "pertains to or is unique to patent law." *See Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d

1347, 1357 (Fed. Cir. 2007) (internal quotation marks omitted). Courts disfavor inequitable conduct claims, and in recent years the Federal Circuit has opined that inequitable conduct claims have "become a common litigation tactic" that has come to "plague[] not only the courts but also the entire patent system." *Therasense*, 649 F.3d at 1289.

To curb the widespread use of this tactic, the court has taken steps to heighten the standards for both pleading and proving inequitable conduct. As an initial threshold, an inequitable conduct pleading must include a specific assertion of who, what, when, where, and how the material misrepresentations were made during the patent prosecution. *Exergen*, 575 F.3d at 1327. The Court finds that Arctic Cat satisfies these initial requirements, based on allegations about Groen's misrepresentations – that in early September 2014, Groen improperly filed an IDS after the PTO would no longer consider additional materials and that he wrongly stated that the issue fee had already been paid. The Federal Circuit has raised the pleading standard even further, though, requiring inequitable conduct pleadings to also "include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with specific intent to deceive the PTO." *Id.* at 1328-29.

Polaris moves to dismiss Arctic Cat's inequitable conduct counterclaim and defense, arguing that Arctic Cat has failed to plead sufficient facts from which the Court could infer that Groen's misrepresentations were material, or whether Groen acted with

specific intent to deceive the PTO. The Court will address each prong of the *Exergen* heightened pleading standard – materiality and intent – in turn.

### A. Materiality

In *Therasense*, the Federal Circuit discussed inequitable conduct claims based on an alleged failure to disclose prior art. The court held that:

> [A]s a general matter, the materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.

*Therasense*, 649 F.3d at 1291. Therefore, in order to adequately plead its inequitable conduct claim, Arctic Cat must allege sufficient facts for the Court to infer that the '028 Patent would not have issued if Groen had properly filed the IDS, such that it would be considered by the PTO prior to the date of issuance. In this respect, Arctic Cat's claim specifies that the PTO would not have allowed at least claim 87 of the '028 Patent had it been properly apprised of the information contained in Arctic Cat's petitions for *inter partes* review. (Countercl. ¶ 64.)

Arctic Cat's petitions for *inter partes* review of the '405 Patent do not reference the '028 Patent or its claims. Instead, the petitions state that the '405 Patent should not have been issued in light of prior art. Specifically, the petitions make reference to prior art contained in four patents: the Denney Patent (7,658,258); the Furuhashi Patent

(5,327,989); the Hickey Patent (3,709,314); and the Hill Patent (3,407,893).[5]  (Carlson Decl., Ex. 11 ¶ 15; *id.*, Ex. 12 ¶ 15.)  Thus, Arctic Cat's but-for materiality theory rests upon an assertion that the PTO would not have issued the '028 Patent had it been aware of the relationship between the '405 Patent and the four prior art references listed in Arctic Cat's petitions for *inter partes* review.  Even more narrowly, Arctic Cat's theory rests upon the contention that the PTO would have held that claim 87 of the '028 Patent is not allowable because it is directly related to claims 1, 2, 5-9, 17-19, 26, and 34 of the '405 Patent.  (Countercl. ¶ 19.)

To determine whether Arctic Cat has adequately pled materiality, the Court looks to Arctic Cat's Answer and Counterclaims, as well as the attached exhibits.  In those materials, Arctic Cat alleges that the PTO would have refrained from issuing the '028 Patent had the '405 IDS been properly submitted, but they do not specify how the PTO would use this prior art related to the '405 Patent in its evaluation of the '028 Patent, when the parties agree that the two patents are not "related."  Arctic Cat asserts that at least claim 87 of the '028 Patent is similar to, and would be rendered obvious by, the '405 Patent and other prior art, but Arctic Cat does not explain why claim 87 would be rendered obvious or how the content in the '405 Patent *inter partes* review petitions would relate to the '028 Patent in a way that would make the PTO less likely to issue the '028 Patent.

---

[5] The petitions also cite two additional patent references.  The parties appear to agree that the Furuhashi, Denney, Hickey, and Hill patents are the ones most relevant to claim 87 of the '028 Patent, which is the claim cited by Arctic Cat in its counterclaims.

Further, the Court notes that it appears the PTO did in fact consider these references during the prosecution of the '028 Patent and found them to be not material. Each of the four prior art references are listed on the face of the '028 Patent, along with a multitude of other patents considered by the PTO during the '028 Patent prosecution. (*Id.*, Ex. B at 2-3.) Thus, because the documents Arctic Cat submitted to the Court as exhibits to their counterclaims indicate that the PTO considered the prior art references and then issued the '028 Patent, the Court cannot conclude that Arctic Cat has adequately pled that, had the PTO considered the references, it would have declined to issue the '028 Patent.

### B. Intent

In addition to requiring but-for materiality, the Federal Circuit requires parties to plead sufficient facts demonstrating that an alleged wrongdoer "withheld or misrepresented this information with specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29. To meet this standard, Arctic Cat pleads that "[o]n information and belief, Mr. Groen's actions were also knowing and deliberate, and done with specific intent to deceive the Patent Office." (Countercl. ¶ 68.) Arctic Cat does not allege any facts to support the contention that Polaris's attorney acted with specific intent to deceive the PTO. Instead, Arctic Cat points to the fact that "Mr. Groen has been a patent attorney for nearly 30 years" and has extensive experience in patent prosecution. (*Id.* ¶ 69.) For these reasons, and because there are no "objective indicators of good faith" on the part of Groen, (Arctic Cat's Mem. in Opp'n to Mot. to Dismiss ("Arctic Cat's Mem. in Opp'n")

at 32-34, Nov. 19, 2014, Docket No. 24), Arctic Cat asks the Court to conclude that the "only reasonable inference" to be drawn from Groen's failure to withdraw the '028 Patent upon receiving notice of the *inter partes* review of the '405 Patent, is that he specifically intended to deceive the patent office, (Countercl. ¶¶ 69-73).

The Court concludes that these allegations are too attenuated to support a finding that Groen **deliberately** withheld material information from the relevant examiner. There are no specific factual allegations that indicate Groen knew the '405 Patent *inter partes* review petition contents were material to the '028 Patent and deliberately withheld those materials from the PTO examiner. *See Exergen*, 575 F.3d at 1331 ("In the absence of such allegations [of deliberate withholding of a known material reference], the district court was correct not to draw any permissive inference of deceptive intent."). Moreover, this Court held in its October 20, 2014 order that Arctic Cat failed to allege deceptive intent with particularity when they made very similar deceptive intent allegations "on information and belief," with no additional facts to support such a conclusion. *Arctic Cat*, 2014 WL 5325361, at *25.

Arctic Cat argues that this situation is different, because "some of the references underlying Arctic Cat's petitions for *inter partes* review . . . were submitted [by Polaris] during prosecution of the '028 Patent, [but] they were buried amongst numerous immaterial and irrelevant references." (Countercl. ¶ 66.) If a prior art reference is "particularly material," burying it among a multitude of less material references can suggest bad faith. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995). The inclusion of multiple references does not, however, appear to have presented a

barrier to the PTO's consideration in this case. Indeed, both the patents and the public record of the '028 Patent prosecution[6] reflect that the patent examiner did consider each of the four references Arctic Cat cites. The examiner either signed or initialed that he had considered each of the relevant prior art references during prosecution of the patent. (Carlson Decl., Ex. 2 (April 20, 2010 IDS) at 1; *id.*, Ex. 4 (October 6, 2010 IDS) at 3; *id.*, Ex. 6 (March 2, 2012 IDS) at 1; *id.*, Ex. 8 (July 29, 2014 IDS) at 1; Countercl., Ex. B at 2-3 (listing each of the Hill, Hickey, Furuhashi, and Denney Patents at "References Cited").)

Because the Court concludes that Arctic Cat has not adequately alleged either materiality or intent, the Court will grant Polaris's motion as to these issues and dismiss Arctic Cat's inequitable conduct counterclaim and defense.

### III. *WALKER PROCESS* FRAUD COUNTERCLAIM

Arctic Cat's fourth counterclaim alleges that Polaris has engaged in monopolization and attempted monopolization of the market for 4x4 Trail ROVs in violation of Section 2 of the Sherman Anti-Trust Act. Arctic Cat argues that because a patent is "an exception to the general rule against monopolies . . . the public [has] a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct . . . ." *Walker Process Equip., Inc. v. Food Mach. &*

---

[6] For purposes of a motion to dismiss, a Court may consider some information not contained within the pleadings, such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Enervations, Inc.*, 380 F.3d at 1068-69. The Court will consider the content of the IDS, as it is necessarily embraced by the counterclaims' allegations of Groen's wrongdoing. The Court will also consider the public record of the '028 Patent prosecution.

*Chem. Corp.*, 382 U.S. 172, 177 (1965) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 816 (1945)). Under this standard – otherwise known as the *Walker Process* doctrine – "[a] patentee who brings an infringement suit may be subject to antitrust liability for the anti-competitive effects of that suit if the alleged infringer (the antitrust plaintiff) proves . . . that the asserted patent was obtained through knowing and willful fraud." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998) (citing *Walker Process*, 382 U.S. at 177).

Federal Circuit precedent dictates – and, indeed, Arctic Cat concedes – that a claim of *Walker Process* fraud cannot be sustained in the absence of inequitable conduct. (Arctic Cat's Mem. in Opp'n at 7 n.1 ("Arctic Cat agrees that, as currently pled, its *Walker Process* and sham litigation counts depend upon its inequitable conduct defense.").) Specifically, the Federal Circuit has held that "failure to establish inequitable conduct precludes a determination that [a party] had borne its greater burden of establishing the fraud required to support its *Walker Process* claim." *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1417 (Fed. Cir. 1987). Because the Court will dismiss Arctic Cat's unenforceability defense and counterclaim – in which Arctic Cat raises its inequitable conduct claims – the Court will also dismiss Arctic Cat's fourth counterclaim alleging *Walker Process* fraud.

## IV. SHAM LITIGATION COUNTERCLAIM

In addition to a *Walker Process* claim, a plaintiff may attempt to assert antitrust liability against a patent holder by way of a "sham" litigation claim. *Nobelpharma*, 141

F.3d at 1068 (internal quotation marks omitted). The Supreme Court has established a two-part definition of what may constitute a "sham" litigation claim. *Prof'l Real Estate Investors v. Columbia Pictures Indus. Inc.*, 508 U.S. 49, 60 (1993). The first requirement is that "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome . . . an antitrust claim premised on the sham exception must fail." *Id.* Second, courts must determine "whether the baseless lawsuit conceals 'an attempt to interfere **directly** with the business relationships of a competitor.'" *Id.* at 60-61 (quoting *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)).

With respect to the first requirement, the Court finds that on the facts of this case, it would be inappropriate to make a determination that no reasonable litigant could expect success on the merits of patent infringement claims of the nature Polaris has alleged. Arctic Cat has neither pleaded nor argued how its Wildcat products do not infringe Polaris's '208 Patent. Arctic Cat alleges generally that "Polaris has sought to monopolize the market for 4x4 Trail ROVs, including by pursuing objectively baseless litigation claims against Arctic Cat, with the knowledge that such claims were objectively baseless and motivated by a desire to interfere with Arctic Cat's business relationships." (Countercl. ¶ 140.) Arctic Cat also alleges that "Polaris's allegations are baseless, and create no probability of any liability by Arctic Cat, including because no objective litigant could conclude that the '028 Patent is valid and enforceable for the reasons set forth above," namely inequitable conduct. (*Id.* ¶ 99.) The Court concludes that this is nothing

more than a recitation of the elements necessary to establish a sham litigation claim. *See Simon Prop. Grp., Inc. v. Palombaro*, 682 F. Supp. 2d 508, 511 (W.D. Pa. 2010) (finding a sham litigation claim to be inadequately pled where the counterclaim alleged only that the opposing party "contacted the U.S. Attorney's Office without cause and . . . filed a baseless lawsuit with the intent of inhibiting competition"). Specifically, Arctic Cat alleges no factual basis to support an inference that Polaris brought its action with **knowledge** that its '028 Patent was invalid.

Indeed, the wording of Count V of Arctic Cat's Answer and Counterclaims – the sham litigation counterclaim – is identical to the wording Arctic Cat used in Count IX of its First Amended Complaint in a related action against Polaris. (*Compare id.* ¶¶ 139-44, *with* Case No. 13-3579, Am. Compl. ¶¶ 150-55, Apr. 29, 2014, Docket No. 10.) In its October 20, 2014 Order, this Court dismissed Arctic Cat's sham litigation claim in the related action for failing to plead any facts suggesting that Polaris's action is objectively baseless. *Arctic Cat, Inc.*, 2014 WL 5325361, at *26. Because the pleadings are identical and Arctic Cat offers no additional argument in support of allowing its sham litigation claim to proceed in this action, the Court will grant Polaris's motion on this issue and dismiss the sham litigation counterclaim.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Polaris's Motion to Dismiss Defendants' Unenforceability and Antitrust Counterclaims and Defense [Docket No. 14] is **GRANTED**. Arctic Cat's

Third Counterclaim (unenforceability), Third Defense (unenforceability), Fourth Counterclaim (*Walker Process* fraud antitrust), and Fifth Counterclaim (sham litigation antitrust) are **DISMISSED with prejudice**.

DATED: August 4, 2015  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court